UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CORNELIUS V. HOSCH**<br>P.O. Box 156<br>McAdenville, NC 28101<br>704-345-5478,<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**BAE SYSTEMS INFORMATION SOLUTIONS, INC.**<br>1101 Wilson Blvd.<br>Suite 2000<br>Arlington, VA  22209<br>703-312-6100<br><br>　　　　**Defendant.** | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF

Plaintiff Cornelius V. Hosch ("Hosch" or "Plaintiff"), by and through counsel, brings this complaint against Defendant BAE Systems Information Solutions, Inc. ("BAE" or "Defendant") for retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h) ("FCA").

### INTRODUCTION

1.　　The Plaintiff alleges that Defendant retaliated against him after he made multiple disclosures regarding BAE's fraudulent billing practices in violation of the FCA and/or in an attempt to stop one or more violations of the FCA.

2.　　The Plaintiff spoke to his Program Manager, Dan Weber ("Weber"), in December 2011, February 2012, and April 2012 regarding BAE's fraudulent billing practices.

1

3. The Plaintiff also reported BAE's fraud in ethics complaints directly to the Defendant on April 29, 2012 and April 30, 2012.

4. The Plaintiff disclosed to BAE that BAE was billing the government for services that were not actually being performed by BAE employees.

5. The Defendant retaliated against Plaintiff by harassing him during his employment and by terminating his employment on May 21, 2012.

6. Because of Defendant's unlawful employment practices, the Plaintiff has and will continue to suffer damages.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically, the anti-retaliation provision of the FCA, 31 U.S.C. § 3730(h).

8. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a) because Defendant transacts business and has extensive and deliberate contacts in this District.

## PARTIES

9. Hosch is an individual domiciled in North Carolina and a citizen of the United States. Plaintiff is an "employee, contractor, or agent" as defined in 31 U.S.C. § 3730(h).

10. BAE is a subsidiary of BAE Systems, PLC, a company incorporated in Great Britain with offices around the world that manufactures global military devices and guided weapon systems. BAE has its headquarters in Arlington, Virginia and is responsible for providing management consulting services including managed network operations, mission support, analytic services, and software solutions.

## FACTUAL ALLEGATIONS

**Hosch's Background and Work History**

11. Hosch is a veteran who served in the United States Army from 1985 to 2006. Hosch served in Iraq from March 2003 to July 2005.

12. Hosch returned to Iraq with the State Department from November 2006 to December 2007 and with the Science Applications International Corporation ("SAIC") from December 2007 to November 2009.

13. Hosch worked as a subcontractor to BAE through SAIC starting on October 2, 2010.

14. BAE hired Hosch as a Regional Manager for the Counter-IED Intelligence Analytical Teams ("CIAT") in the Regional Command East ("RC-E") on December 5, 2011.

15. Hosch managed forty-two (42) CIATs for a total of 194 employees in the military battle space of eastern Afghanistan.

16. Hosch managed the largest Regional Command in Afghanistan. Two regional managers were used to manage Regional Command South which had fewer personnel.

17. Hosch's division supported sixty-four (64) different customers in the region.

18. Hosch's boss, Dan Weber ("Weber"), was the Program Manager for the Counter IED contract since April 2011.

19. In March 2012, Weber gave Hosch an excellent performance review.

20. The performance review said in part: "Outstanding performance. [Hosch] performed superbly during a highly compressed PDR rating cycle. [Hosch] manages the largest portfolio of any of the six Regional Managers in Afghanistan. [Hosch] is a seasoned manager . . . We look forward to continued outstanding performance in 2012."

21. Hosch received a $5,600 pay increase as a result of his outstanding performance review.

**Hosch Discovers BAE's Billing Fraud**

22. Soon after Hosch joined BAE in December 2011, Hosch discovered that BAE was billing the government for tasks that were not being completed.

23. BAE was hiring certain personnel to complete logistical and administrative tasks but BAE was using these personnel to bill the government for more lucrative labor.

24. BAE placed these administrative and logistical personnel under labor categories such as CIDNE (Combined Information Data Network Exchange) database operators, HUMINT (human intelligence) analysts, SIGINT (signals intelligence) analysts, and Collection Management officers on their timecards.

25. The administrative and logistical personnel BAE hired were not qualified for the positions under which BAE was billing them to the government.

26. The administrative and logistical personnel were also not conducting the duties for which BAE billed the government.

27. By falsely and purposefully miscategorizing the work performed, BAE charged the government for more work than was actually performed or which was contractually permitted.

28. BAE's contract authorized two administrative positions, but employees in these positions did not earn as much money for the company as the positions for which BAE billed their work.

29. This fraudulent billing activity was being done prior to Hosch joining BAE in December 2011.

**Hosch Reports the Billing Fraud to Weber**

30. In or about December 2011, Hosch asked Weber about two subordinate employees Hosch knew personally, Peter Peterson ("Peterson") and Marilsa Santiago ("Santiago"), who were performing administrative and logistical work, but who were being billed by BAE as CIDNE operators.

31. Hosch had referred both Peterson and Santiago to BAE and he knew that they did not have backgrounds in CIDNE and did not know how to operate CIDNE.

32. Hosch proposed to Weber that the labor categories for both Peterson and Santiago be changed to reflect accurately the administrative and logistical work they were actually performing for BAE and its government customer.

33. In or about February 2012, Hosch again spoke with Weber regarding the billing fraud.

34. Hosch told Weber that having people perform tasks outside of the labor category they were hired for and billing the government for that time was time card fraud on the government.

35. Hosch also told Weber that Hosch planned on changing the billing labor categories for both Peterson and Santiago to reflect accurately the work being completed.

36. Weber responded saying: "You better not talk to me again about labor category fraud and time card fraud because I am using guys at my HQ to do my admin and help Mr. Tutt with ghost writing of FRAGO's."

37. Hosch said that CIDNE operators should not be used to do administrative work and their jobs should accurately reflect the administrative labor positions allowed according to BAE's contract.

38. Weber replied saying: "We make more money with having the other labor categories in country."

39. Weber also threatened Hosch by saying that if he "kept it up" then he would "end up like Tony," an employee whose contract was not extended after the first year because Tony would "question things" that did not "look or sound right."

40. On or about April 6, 2012, Hosch told Weber that Hosch was moving his subordinate Peterson to a valid position in compliance with the contract and that accurately reflected the work performed.

41. Weber told Hosch that the COR (Contracting Officer Representative) knew employees were being worked outside the labor category and was fine with it.

42. Weber also told Hosch that Hosch had been in the area too long and that Weber was going to move Hosch and make it so that Hosch could not refuse.

**BAE Begins to Retaliate against Hosch**

43. In or about February 2012, after Hosch had twice reported the billing fraud to Weber, Weber began creating a difficult work environment for Hosch.

44. Weber began communicating with Hosch's subordinate (Peterson) directly and skipping Hosch altogether.

45. Hosch notified Weber that Weber should not communicate with Hosch's subordinates directly.

46. On or about April 6, 2012, Weber instructed Peterson to disregard a task that Hosch had assigned to Peterson.

47. When Hosch protested, Weber said: "[Peterson] will do what I need him to do even if you don't want him to do it."

48. On or about April 26, 2012, Hosch found out that Weber had directed another employee, Oscar Denson ("Denson") to replace Hosch.

49. Hosch did not know this until he picked up Denson from the airport.

50. Denson told Hosch that Weber directed Denson not to tell Hosch he was being replaced.

51. On or about April 29, 2012, a government customer approached Hosch and asked Hosch if Hosch was leaving.

52. Hosch later learned that Weber had approached Hosch's government customers and told them that Hosch was being fired.

**Hosch Files Complaints and BAE Again Attempts to Fire Hosch**

53. On or about April 29, 2012, Hosch submitted a complaint to BAE's Ethics department.

54. Hosch reported how Weber "created a hostile work environment" between Hosch and Peterson by undermining Hosch.

55. Hosch reported how on April 26, 2012, Weber was pushing Hosch out of RC-E by directing another manager to replace Hosch.

56. Hosch reported how in February 2012, Weber told him: "You better not talk to me again about labor category fraud and time card fraud because I am using guys at my HQ to do my admin and help Mr. Tutt with ghost writing of FRAGO's."

57. Hosch reported how on or about April 6, 2012, Weber told Hosch he did not want to talk about "hours" or moving Peterson to a valid position to ensure compliance with BAE's contract.

58. Hosch reported that Weber said: "We make more money with having the other labor categories in country," and that if Hosch "kept it up" he would "end up like Tony."

59. Hosch reported that Weber said: "the [Contracting Officer's Representative (COR)] knew we were working employees outside the labor category and that he was fine with it."

60. In closing, Hosch stated: "I feel that since I raised the concerns of time card fraud, time charging and working employees outside their labor categories that I have been retaliated against which goes directly against BAE's Ethic's and Hostile Workplace Policy's, Whistle Blower Protection Act and Reporting Fraud Waste and Abuse."

61. On or about April 30, 2012, Hosch submitted another complaint regarding "the latest harassment and slander" from Weber.

62. Hosch reported that Weber had approached Hosch's government customers and told them they were firing him and removing him from the workplace.

63. On or about May 1, 2012, Weber called Hosch and told him he was being moved to another regional office effective immediately.

64. Weber told Hosch that Hosch would be put on a Performance Improvement Plan ("PIP") before going to the new location.

**BAE Calls Hosch to Inquire about His Complaints but Fails to Investigate Hosch's Complaints and then Promptly Terminates Hosch**

65. On or about May 1, 2012, Cheri Raven ("Raven"), BAE's HR Ethics Director, told Hosch she was investigating his complaints.

66. On or about May 18, 2012, Raven called Hosch and began asking him questions. The questions did not pertain to Hosch's complaints but were instead directed at him.

67. Raven asked, *inter alia*, whether Hosch had Counsel, whether he planned on suing BAE, and what he wanted to happen with his complaint.

68. Hosch stated that he wanted everything to get worked out.

69. Three days later, on or about May 21, 2012, BAE HR employee Carolyn Harris called Hosch and told Hosch that he was being terminated from BAE.

70. On or about May 22, 2012, Hosch received a termination letter from BAE confirming his termination.

## COUNT I
### False Claims Act, 31 U.S.C. § 3730(h)
### Retaliation

71. Hosch incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

72. The False Claims Act, 31 U.S.C. § 3730(h), prohibits BAE from retaliating against an employee who engages in protected conduct by taking lawful actions in furtherance of an FCA claim or by making efforts to stop one or more violations of the FCA.

73. An employee need not actually file a *qui tam* suit or even know about the protections of Section 3730(h) to qualify for protection under the retaliation provisions of the FCA.

74. An employee who characterizes the employer's conduct as illegal or fraudulent or who tries to stop a false claim from being made engages in protected conduct.

75. Hosch engaged in protected conduct by disclosing to BAE via Weber that Hosch believed BAE was fraudulently billing administrative workers under different and more lucrative labor categories than allowed under the contract.

76. In or about December 2011, February 2012, and April 2012, Hosch engaged in protected conducted by disclosing what Hosch believed in good faith to be fraudulent activity to his supervisor Weber and by trying to stop the fraudulent activity.

77. On or about April 29 and 30, 2012, Hosch further engaged in protected conducted by disclosing this fraudulent activity to BAE's Ethics Department.

78. BAE had knowledge of Hosch's protected disclosures because in or about May 2012, Raven of BAE's Ethics Department called Hosch to inquire about his complaints.

79. After Hosch engaged in these protected activities, BAE retaliated by demonstrating animosity toward Hosch each time he made a disclosure, instructing him to not talk about the fraud, and threatening his employment with the company.

80. BAE's retaliation culminated in terminating Hosch's employment less than one week after Hosch's last direct disclosures to BAE.

81. BAE would not have retaliated against Hosch if Hosch had not engaged in protected activities under the FCA.

82. Hosch has suffered substantial monetary and non-monetary damages as a direct and proximate result of BAE's retaliation.

## PRAYER FOR RELIEF

Based on the foregoing claims, Hosch respectfully requests that he be awarded the following relief:

a. Reinstatement with the same seniority status, duties, and working conditions applicable at the time of his termination, and abatement of the retaliatory conduct directed toward him, or alternatively, front pay;

b. Economic damages for lost wages and benefits, including two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination;

c. Special damages, including but not limited to, damages for mental and emotional distress and harm to reputation;

d. Costs and reasonable attorneys' fees; and

e. Any other just and equitable relief this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a jury trial on all claims on which he has the right to a jury trial.

Respectfully submitted,

R. Scott Oswald, DC Bar #: 458859
Adam Augustine Carter, DC Bar #: 437381
The Employment Law Group, P.C.
888 17th Street, NW, 9th Floor
Washington, DC 20006
(202) 261-2803
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
acarter@employmentlawgroup.com
*Counsel for the Plaintiff*