**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

CORNELIUS V. HOSCH,         )
                                 )
      Plaintiff,             )
                                 )
      v.                     )     Case No: 1:13-cv-00825 AJT-TCB
                                 )
BAE SYSTEMS INFORMATION    )
SOLUTIONS INC.,              )
                                 )
      Defendant.          )
                                 )

**BAE SYSTEMS INFORMATION SOLUTIONS INC.'S MEMORANDUM IN SUPPPORT OF ITS MOTION FOR SANCTIONS**

Connie N. Bertram
VA Bar No. 31713
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Suite 400 South
Washington, D.C. 20004-2533
Telephone: (202) 416-6800
Facsimile: (202) 416-6899
cbertram@proskauer.com

*Counsel for Defendant*

## I.   INTRODUCTION

Plaintiff has resisted his discovery obligations at almost every turn, requiring BAE Systems to fight to obtain relevant and essential discovery.  Although one might have expected Plaintiff to change his behavior since the Court issued its December 6, 2013 Orders, this has not been the case. Since the Orders were issued, Plaintiff has willfully refused to produce responsive documents and to submit all of his devices and accounts for inspection.  He also failed to provide supplemental interrogatory responses or executed releases for medical and military records by the Court-ordered December 13, 2013 deadline, providing them on the eve of the close of discovery.   Moreover, his claimed excuse for the delay – being in remote parts of Afghanistan – fall short because his travels began on December 19, almost two weeks after the Court issued its Orders.  The responses and documents that he did produce were woefully deficient.

The data uncovered from the initial forensic review vividly demonstrates Plaintiff's failure to comply with his discovery obligations and the Court's Orders.  It is now evident that Plaintiff failed to produce responsive materials related to his mitigation efforts, his current and past employers, his medical treatment and history, and his unauthorized possession and misuse of BAE Systems' documents and data.  The review has also revealed that he deleted relevant evidence days after he received BAE Systems' litigation hold notice and made false representations regarding the preservation of evidence.   The evidence from that review has also raised serious questions about his candor in these proceedings.  It appears that Plaintiff has not been forthright in his discovery responses and deposition testimony about whether the military demanded the return of BAE Systems' offices before he was transferred to another region or about the full scope of work of his company, Hosch Enterprises.

1

BAE Systems has undoubtedly been prejudiced by Plaintiff's brazen violations of his discovery obligations and this Court's Orders.  As a consequence of his tactics, BAE Systems has been forced to sift through over 10,000 documents at the close of discovery.  That review has uncovered a substantial number of responsive documents that triggered additional discovery efforts and changed its approach to discovery.   Plaintiff has turned the discovery process on its head in an effort to evade his discovery obligations and avoid producing discovery harmful to his case.  Under these circumstances, the only appropriate remedy is to dismiss Plaintiff's case with prejudice.

## II.    STATEMENT OF FACTS

### A.   Plaintiff And His Counsel Refuse To Return Extensive BAE Systems' Documents And Data He Stole From BAE Systems

As soon as it anticipated litigation with Plaintiff, BAE Systems notified Plaintiff and his counsel of their obligation to preserve all relevant documents and data.  In its October 4, 2013 notice, BAE Systems advised Plaintiff and his counsel that:

> In order to assure that none of this critical data is lost, and to comply with the document preservation duties discussed above, ***Hosch is obligated to have all computers, personal communications and electronic devices (including his personal cell or smart phone), and storage media and databases that Hosch owns, used or uses imaged by a certified computer forensics specialist*** and preserved until his preservation obligations expire.

Bertram Dec. (Ex. A), Ex. 1.  Plaintiff's counsel wrote to BAE Systems' counsel on October 17, 2012, claiming to have complied with the notice.  *Id.*, Ex. 2. [1]

Plaintiff filed his Complaint on February 5, 2013.  In investigating the allegations of the Complaint, BAE Systems determined that Plaintiff had systematically forwarded to one of his

---

[1] On October 24, 2012, BAE Systems, in an abundance of caution, served a litigation hold and document preservation notice on the previously undisclosed Hosch Enterprises, a company owned by Plaintiff.  Bertram Dec., Ex. 3.  Plaintiff's counsel, by letter dated November 6, 2012, certified that Plaintiff and his company had complied with their preservation obligations.  *Id.*, Ex. 4.

personal email accounts a substantial quantity of BAE Systems' emails and documents in April and May 2012.  Bertram Dec., ¶ 26.  Plaintiff later admitted at his November 4, 2013 deposition that he forwarded "all" of his BAE Systems emails to his personal email account.  Hosch Tr. at 146 (Ex. B).  On September 28, 2012, BAE Systems demanded that Plaintiff return all of the documents and data of BAE Systems in his possession, custody or control.  Bertram Dec., ¶ 24.

In an October 17, 2012 email, counsel for Plaintiff admitted that he had BAE Systems' documents and data, but refused to return them.  *Id*., Ex. 2.  On November 2, 2012, counsel for BAE Systems reiterated its demand that Plaintiff return BAE Systems' documents and data, explaining that such "self-help" discovery was not protected under the law.  *Id*., Ex. 5.  Plaintiff, however, continued to refuse to return BAE Systems' documents and data.  *Id*., ¶ 3.  BAE Systems again demanded the return of its property in a letter dated January 16, 2013.  *Id*., Ex. 6.

Plaintiff continued to ignore BAE Systems' demands, retaining possession of what BAE Systems very recently learned is a veritable library of email communications, contracting documents, and documents relating to the policies, procedures and day-to-day operations of the CIED Contract and Regional Command-East ("RC-E"), the Region that Plaintiff managed.  Other than hiring and policy documents and emails that Plaintiff considered "helpful" to his case, Plaintiff did not produce any of these documents to BAE Systems in discovery, even after the Court's December 6, 2013 Orders granting BAE Systems' motions to compel.

**B.  <u>Plaintiff Refuses To Produce Relevant Discovery</u>**

On August 20, 2013, BAE Systems served on Plaintiff its First Set of Interrogatories and Requests for Production.  *See Id*., Exs. 7, 8.  On September 25, 2013, Plaintiff served his substantive responses to certain of the discovery requests and produced 516 pages of documents. *See id.*, Exs. 9, 10.  Other than policies and hiring, compensation and benefits documents, Plaintiff's production

included, almost in its entirety, documents that Plaintiff had removed from BAE Systems in violation of Company policy. Hosch Tr. at 146, 201 (Ex. B). On September 23, 2013 and October 4, 2013, BAE Systems served on Plaintiff a Rule 34(a)(1) Notice of Inspection that sought the preservation, imaging and inspection of his personal computers and storage and communications devices, email and social media accounts. Bertram Dec.., Exs. 11, 12. Plaintiff objected to the Notices, stating that they were "not relevant to any party's claim or defense [and were not] reasonably calculated to lead to the discovery of admissible evidence." *Id.*, Ex. 13.

### C. BAE Systems Is Forced To File Motions to Compel

As a result of Plaintiff's refusal to provide full responses to BAE Systems' discovery requests and permit a forensic inspection of his computers and electronic storage devices, BAE Systems filed motions to compel on November 29, 2013. *See generally* Compel Mem., ECF No. 40; Review Mem., ECF No. 43. On December 6, 2013, the Court held a hearing on both of the motions. At the hearing, the Court granted both of BAE Systems' motions in their entirety. Order, ECF No. 53. Plaintiff was ordered to: (1) provide complete responses to Interrogatory Nos. 3, 8-11; (2) produce all documents responsive to Document Request Nos. 6-7, 13, 22-25; (3) sign releases to permit BAE Systems to obtain medical and military records; and (4) submit to the forensic inspection identified in the Notices of Inspection. *See* Order, ECF No. 53; Proposed Order, ECF No. 39-1; Proposed Order, ECF No. 42-1.

### D. Plaintiff Failed To Comply With The December 6, 2013 Orders Compelling Him To Submit to A Forensic Inspection

The Court ordered Plaintiff to produce all of his devices and accounts for inspection by December 13, 2013. Counsel for Plaintiff complained at the hearing that certain of the devices may be in Afghanistan. The Court responded that he could "ship them back here." Dec. 6, 2013 Tr. at 27,

4

ECF No. 64.  With respect to devices located in North Carolina, Plaintiff's counsel commented that he did not "know how to get access to that."  *Id*.  The Court responded, "[w]ell, he's going to have to figure out something."  *Id*.  However, rather than "ship them back" or "figure it out," Plaintiff merely offered for inspection on December 13 the forensic image of two devices that happened to be located in his counsel's office.  Plaintiff also provided credentials to access his Yahoo! personal email account.  Racich Dec. ¶ 3 (Ex. C).

Notably, Plaintiff failed to produce a number of devices and accounts identified in his discovery responses, including:  a Motorola Verizon cellphone; a T-Mobile Blackberry; a Verizon iPhone; "Toshiba HP computers," his Gmail account, his us.army.mil account, and the email account he used in connection with his business, Hosch Enterprises.  Bertram Dec., Ex. 9 at 13-14; *id*., ¶ 4; Racich Dec. ¶ 3 (Ex. C).  On December 11, 2013, Counsel for BAE Systems clearly notified Plaintiff's counsel that all of Plaintiff's computers and devices had to be submitted for forensic review, including those devices and computers identified in his responses to interrogatories.  Bertram Dec., Ex. 14.  Counsel for Plaintiff responded later that day, identifying the devices he had in his possession at that time.  *Id*., Ex. 15.  BAE Systems' counsel proposed that the parties proceed with imaging of those devices and then "do a second imaging once when you identify the other devices." *Id*., Ex. 16.

On December 18, 2013, counsel for Plaintiff stated that Plaintiff would not be producing a number of the devices for forensic inspection despite the Court's Orders.  *Id.*, Ex. 17.  He acknowledged that Plaintiff owned and used the previously identified Blackberry while employed by BAE Systems, but claimed that the device was outside the scope of the Court-ordered forensic review.  *Id*.  He similarly claimed that his Toshiba computer was exempt from the review because he did not use it while employed by BAE Systems.  However, he conceded that he used it "to store all

the information regarding BAE on the external hard drive" he produced to Vestigant.  *Id* at 2.

Plaintiff refused to produce the iPhone because he claimed he obtained it after he was terminated.  *Id*.

Plaintiff did not provide an explanation for not producing the Motorola cellphone, which he admitted

to using while working for BAE Systems.  *Id*.; Hosch Tr. at 96-97 (Ex. B).

 With respect to Plaintiff's email accounts, counsel for Plaintiff represented in his December

18 letter that Plaintiff could not access his us.army.mil account because "[t]he Department of Defense

changed this email system to the Army Enterprise Mail system on November 15, 2013 and requires a

Common Access Card (CAC) specific to the user to login.  This account cannot be accessed with

passwords and was owned by the Department of Defense during the time of use."  Bertram Dec. Ex.

17.  He did not reference Plaintiff's Gmail or Hosch Enterprises account.  *Id*.

 On December 31, 2013, counsel for the parties conferred regarding this motion for sanctions,

including a detailed discussion regarding the devices and accounts that had not been produced.  *Id*.

Ex. 18.  Counsel for BAE Systems explained that, in addition to the previously-identified devices,

Plaintiff had failed to produce an iPad he purchased from a website called Zagg.com that BAE

Systems discovered in reviewing the information submitted for forensic review.  *Id*.  BAE Systems'

counsel also told counsel that Plaintiff had failed to provide credentials for Plaintiff's Gmail account

and an email account for Hosch Enterprises.  *Id*.[2]  She also challenged Plaintiff's counsel's assertion

that Plaintiff's us.army.mil email account could no longer be accessed.

---

[2]  Counsel for Plaintiff said that the Gmail account had been set up to facilitate communications
between his firm and Plaintiff.  Bertram Dec. ¶ 5.  Counsel for BAE Systems explained that the
account should have been disclosed in discovery, even though it may contain privileged documents.
She also cited examples of documents that had been sent from Plaintiff's Yahoo! account to the
Gmail account that were not privileged.  *Id*.

Counsel for Plaintiff followed up by email on December 31, 2013, stating that the Blackberry and Motorola cellphone could not be produced before the close of discovery because they were "likely" in Afghanistan.  Bertram Dec., Ex. 19.  With respect to the iPhone and Toshiba computer, Plaintiff's counsel claimed that he had been waiting to hear from BAE Systems' counsel about these devices.  *Id.*  That claim was inconsistent with emails and letters from counsel for BAE Systems clearly stating BAE Systems' position that "[c]onsistent with Judge Buchanan's order, we also need to inspect ***all*** of Mr. Hosch's computers and devices, including the actual external drive and the devices identified in Mr. Hosch's responses to BAE Systems' interrogatories[.]"  *Id.*, Ex. 14; *see also id.* Ex. 12 .   It was also inconsistent with Plaintiff's counsel's December 18, 2013 letter refusing to produce the devices.  *Id.*, Ex. 17.

Finally, over two weeks after the deadline for compliance with the December 6 Orders, counsel for Plaintiff agreed:  (1) to ask his client to make arrangements to have the Toshiba computer sent from North Carolina to Washington, D.C.; (2) explore producing the iPad and iPhone data available through remote access; and (3) provide credentials for the Gmail and Hosch Enterprises accounts to Vestigant.  *Id.*, Ex. 19.  He also changed his position on the mil.army.gov account, acknowledging that – contrary to his prior statement that the account had been inaccessible since November 15, 2013 – Plaintiff ***could*** access the account through an access card.  *Id.*.

As explained in more detail below, there are four distinct concerns raised by the history of and communications concerning these devices and accounts.  First, it is evident that the representations in counsel's letters concerning the preservation and imaging of relevant data were false.  Second, Plaintiff's counsel similarly misrepresented in his opposition to BAE Systems' motion to compel forensic review that Plaintiff "professionally imaged ***any*** electronic device in his possession that contained any information regarding BAE Systems or his claims against his former employer."

Compel Opp. at 3, ECF No. 46 (emphasis added).  Third, other than providing a single device stored in counsel's office and credentials for one on-line account, Plaintiff did ***nothing*** to comply with the October 6, 2013 Orders.  Fourth, the minimal data that has been produced to date shows that Plaintiff made misrepresentations concerning the devices and accounts that were subject to the Orders.

### E.  Plaintiff Fails To Comply With The Court's Orders Compelling Production of Documents

#### a.  Plaintiff's Inadequate Supplemental Production

As part of its December 6 Orders, the Court ordered Plaintiff to produce by December 13, 2013 all documents responsive to Request Nos. 6, 7, 13, 22, 23, 24 and 25.  *See* Order, ECF No. 53; Proposed Order, ECF No. 39-1.  On December 11, 2013, Plaintiff produced a small group of documents that purported to be "consistent with the Court's order."  Bertram Dec., Ex. 20 at 1.  In his cover letter for the production, Plaintiff's counsel represented that, other than "a few documents" from Scientific Applications International Corporation ("SAIC") and "a partial military record" being sent by Plaintiff from Afghanistan, the production "represents remaining documentation that Mr. Hosch has in his possession, custody or control pertaining to prior employers, mitigation efforts, current employer, military records and medical records."[3]  *Id.*

The supplemental production, however, failed to comply with the Orders.  The production included several large documents, including a Garrison Billeting Standard Operating Procedure, incurred cost audit procedures and DCAA Information for Contractors, all dated after Plaintiff's

---

[3] On December 31, 2013 beginning at 5:38 p.m., Plaintiff produced 249 pages of documents, consisting primarily of military records.  Bertram Dec. ¶ 6.  Today at 4:03 p.m., as BAE Systems was in the process of filing this brief, Plaintiff produced additional documents he claimed "were mistakenly overlooked but discovered through the forensic imaging," and additional medical documents that "were to be appended to the production on 12/31."  Bertram Dec., Ex. 21.  BAE Systems has not had an opportunity to review this late production in advance of this filing.

employment with BAE Systems, none of which appear to be responsive to any of these Requests. Bertram Dec., ¶ 7.  The remainder of the production included additional documents relating to Plaintiff's employment with Raytheon and pages of screen-shots of Plaintiff's email in-box or file of communications concerning his job search.  *Id.*

The December 11 supplemental production did not include any medical or psychiatric records, other than medical screenings for Plaintiff's deployment by Raytheon in 2013.  Significantly, the production did not include any documents relating to his diagnosis or treatment by VA hospitals and doctors, the annual psychiatric examination described by his counsel at the December 6, 2013 hearing or the treatment that Plaintiff received after he left the Bagram Air Force Base ("BAF") and after he returned to the United States in May 2012.  Moreover, the production did not include any documents relating to his prior employers.  Bertram Decl. ¶ 7.

In addition, rather than produce actual communications, applications and resumes relating to his job search, Plaintiff produced "screen-shots" of Plaintiff's inboxes or email files concerning his job search.  Bertram Dec., ¶ 8.  Even based on the minimal information in the "to," "from" and "subject" lines in these screen shots, it is evident that there were numerous responsive documents beyond these email communications.  *Id.*  The summaries of the emails made reference to resumes, applications, interviews and various contingent job offers.  However, other than the handful of documents relating to Raytheon, Plaintiff did not produce any of those types of responsive documents.

**b.  <u>BAE Systems Complains About Plaintiff's Deficient Production</u>**

In a December 12, 2013 letter, BAE Systems demanded that Plaintiff cure the numerous deficiencies in his supplemental production and produce responsive documents by the close of business on December 13, 2013, the deadline of the Orders.  *Id*., Ex.22.  Plaintiff did not respond to

the December 12, 2013 letter or supplement his production by that deadline.  When he eventually

responded almost a week later, Plaintiff refused to supplement his production, stating:

- "We have produced to you all of the medical and psychiatric records that Plaintiff has in his possession, custody or control."

- "To the extent [Plaintiff] did not produce any documents relating to his diagnosis of treatment by VA hospitals or his annual psychiatric evaluation, it is because he does not have those documents.  ***There is nothing left for Plaintiff to produce.***"

- Counsel represented that Plaintiff had sent copies of certain records relating to his employment with SAIC and that other "than the documents [Plaintiff] has already produced, that you have already obtained through subpoenas or otherwise, or that [Plaintiff] will produce as soon as they are received, [***Plaintiff] has nothing further.  Thus, [Plaintiff] will have fulfilled his obligations relating to [Plaintiff's] prior employers once the final documents are received and produced.***"

- Plaintiff also took the position that he fulfilled his obligation to produce documents relating to his mitigation efforts by making available for inspection his Yahoo! account in response to the Court's December 6 Orders compelling forensic inspections.

*Id.*, Ex. 17 (emphasis added).

### c. BAE Systems' Initial Review Of Forensic Data Reveals The Fallacy of Plaintiff's Representations And The Failure To Comply With His Discovery Obligations

Data from the initial forensic examination was delivered to Counsel for BAE Systems on

December 18 and 19, 2013.  Racich Dec., ¶ 6 (Ex. C).  Counsel for BAE Systems conducted a

preliminary review of the data on December 23 and 24.  Bertram Dec., ¶ 9.  It was evident from that

review that the documents, emails and other data generated by the examination contained numerous

documents, including highly confidential documents relating to BAE Systems' work on the CIED

Contract, that Plaintiff had removed from BAE Systems' databases in violation of Company policy.

Bertram Dec., ¶ 10.  As of the date this filing, counsel for BAE Systems is still sifting through the

10,000 documents obtained through this initial forensic review.  Even so, it is readily apparent that

Plaintiff has had in his possession since prior to the commencement of this litigation thousands of

documents responsive to a number of BAE Systems' discovery requests that he simply refused to produce.

### i. Plaintiff Failed To Produce BAE Systems' Documents and Data

When BAE Systems requested in discovery all documents and data of BAE Systems and relating to Plaintiff's employment with BAE Systems, Plaintiff repeatedly represented that he had provided a complete production. *Id*., ¶ 11. As discussed, he also resisted BAE Systems' efforts to undertake a forensic inspection of his devices and accounts. It is now clear why Plaintiff fought the forensic inspection so vigorously. The forensic review revealed that Plaintiff failed to produce a cache of BAE Systems' files, reports, databases, records and other discoverable material that, contrary to his representations, should have been returned and/or produced to BAE Systems months ago.

As noted above, Plaintiff produced an image of a CD-ROM containing 534 documents. *Id*. ¶ 12. From the pathnames and metadata associated with the documents, it appears that Plaintiff downloaded the documents on the CD-ROM on April 30, 2012, the day he was notified that BAE Systems was transferring him to Regional Command-North ("RC-N") and placing him on a performance improvement plan. *Id*., ¶ 13. The pathname of each document includes "April302012," and then is preceded or followed by "RM Only," the portion of the Share Drive that was only accessible by Plaintiff, the RM of RC-E at the time. *Id*., ¶ 14. The pathnames include in many instances the subject matter of the sub-file in the RM Only file, including "Resumes," "Personnel Rosters," "RCE Counseling," and "RCE Counseling/Unit Evaluations." *Id*., ¶ 15.

The CD-ROM includes numerous categories of documents concerning the operations of the CIED program and contract and RC-E, including:

- Detailed contact, personnel and assignment information, including the CUBs described below, concerning managers and personnel assigned to the CIED contract and to RC-E;

- Work Authorization Memos ("WAMs") and other authorization documents for personnel working on the CIED contract;

- Extensive personnel files and documents concerning employees and contractors assigned to work on the CIED contract, including applications and resumes, complaint letters, letters of commendation, performance evaluations, termination notices and counseling notices;

- Job descriptions for positions on the CIED contract;

- Hand receipts for property assigned to personnel working on the CIED contract; and

- Travel guidelines and other policies for the CIED program.

*Id.*, ¶ 16.

For example, the CD-ROM includes a highly confidential document entitled "Regional Command West Counter IED Analytical Team Standard Operating Procedure." *Id.*, ¶ 17. The preface to this 59-page document describes it as follows:

> . . . The purpose of this document is to provide teams operating in Regional Command West with a reference to answer questions about the program, specific information pertaining to analysts, who to contact for requests, and guidance on integrating with the supported unit. This document describes–
>
> - Counter IED Analytical Team Program
> - Pre-Deployment Focus and Requirements
> - Counter IED Analytical Team Duty Descriptions
> - Working in an ISAF Environment
> - Arrival in Country to Regional Command Site
> - Regional Guidelines and Requirements
> - Corporate Guidelines and Requirements
>
> This document provides CIAT guidance for all Site Leaders and Counter IED Analytical Team Personnel at all echelons in Regional Command West.

*Id.* This document was not produced by Plaintiff in response to BAE Systems' requests for all documents of and removed from and of BAE Systems. *Id.*, ¶ 18.

The CD-ROM also includes a number of detailed Excel spreadsheets called CUBs that

identify all of the personnel assigned to the CIED Contract. *Id.*, ¶ 19. For each employee or contractor, the spreadsheet identifies the name, social security number, section, location, labor category, race, gender, company, clearance level, site lead, contract renewal date, and arrival date. *Id.* The spreadsheet also includes the status of employees on leave. *Id.* It also includes a PERSAT (personnel inventory) of personnel assigned to BAE Systems' CIED contract. *Id.* None of these documents was produced by Plaintiff in discovery.

These undoubtedly relevant documents should have been produced by Plaintiff in his initial production over three months ago. Perhaps Plaintiff believed that, by dragging his feet and producing them over the holidays with thousands of other communications, BAE Systems would not take the time to locate them. This type of gamesmanship and willful violation of this Court's orders and discovery rules simply cannot be condoned.

### ii. Plaintiff Has Failed To Produce All Medical And Psychiatric Records

As noted above, in his December 18, 2013 letter, Plaintiff pronounced that he had produced "all of the medical and psychiatric records" in response to the December 6 Orders. *Id.*, Ex. 17. However, the forensic review revealed extensive documentation concerning Plaintiff's emotional condition and treatment and the claimed cause(s) of it.

For instance, after he was terminated by BAE Systems, Plaintiff applied for and was accepted to a six-week program for veterans suffering from Post-Traumatic Stress Disorder ("PTSD"). *Id.*, Ex. 23. The Department of Veterans Affairs Specialized Inpatient Post-Traumatic Stress Disorder Treatment Program ("SIPU") is "designed to evaluate and treat veterans who have severe psychological injury related to traumatic war-zone experience" and is "reserved for persons who require more intensive treatment." *Id.*, Ex. 24 at 1. The VA designed the SIPU as a "highly-

13

structured and intense six-week treatment program . . . to address the biological, psychological, and social needs" of veterans.  *Id*.

Significantly, the treating physician who referred Plaintiff to the program on November 30, 2012 noted that Plaintiff had witnessed the death of a 19 year old in Iraq and had been in a firefight while deployed in the military.  *Id*., Ex. 25.  As a result, Plaintiff's physician reported that Plaintiff continued to experience vivid dreams about Iraq, firefights, and mortars.  *Id*.  He stated that he also suffered anxiety in traffic and crowds and could not travel over bridges.  *Id*.  Amazingly, Plaintiff did not identify this program in his supplemental response to Interrogatory Nos. 10 or 11.  *Id*., Ex. 26.  In addition, he did not produce any documents in response to Document Request Nos. 22 or 23, which requested all documents relating to medical and psychological treatment.  *Id*., Ex.10.  Because his participation in this program is relevant both to the cause of his claimed emotional distress and to the computation of any backpay award, Plaintiff cannot offer any legitimate justification for failing to produce these documents.

### iii.   **Plaintiff Failed to Produce Documents Relating To Prior Employers**

Similarly, Plaintiff's representation that he has "nothing further" concerning prior employers is simply shocking given the information obtained from the forensic review.  Plaintiff stored on his hard drive a cache of documents relating to his employment with SAIC and BAE Systems.  *Id*., ¶ 20.  The SAIC documents include materials from the period that Plaintiff worked as a contractor for BAE Systems on the CIED Contract.  Much like the BAE Systems documents described above, these files include comprehensive library of documents relating to his work for SAIC, including training materials, standard operating procedures, personnel information, status reports and documents relating to Plaintiff's employment performance.  *Id.*

14

### iv.  Plaintiff Failed to Produce Numerous Documents Pertaining to His Mitigation Efforts

Despite seeking over $2 million in back and front pay damages, Plaintiff has consistently resisted the production of records relating to his efforts to mitigate damages and his subsequent job offers and employers.  Even after being ordered to produce these communications and documents, Plaintiff only produced "screen-shots" of certain email files including communications with prospective employers.  *Id*., ¶ 8.  When BAE Systems protested, Plaintiff essentially said "go and fetch it," demanding that BAE Systems dig through thousands of email files to locate mitigation communications that he should have produced months ago and that would have dramatically impacted BAE Systems' approach to mitigation discovery and experts.

Although BAE Systems has not had the opportunity to review all of the data, the results of the forensic review thus far have been illuminating.  For instance, these documents identify additional employers who may have offered employment to Plaintiff after he was terminated by BAE Systems and before he received an offer from his current employer, Raytheon.  They also include offers of employment from SAIC and SOS International ("SOSi").  *See id.*., Exs. 27, 28.  Although BAE Systems learned about the SAIC offer from Plaintiff's expert report, Plaintiff did not disclose the SOSi offer to BAE Systems or his own expert.  Bertram Dec., ¶ 21.  In addition, General Dynamics apparently would have been willing to offer Plaintiff employment in April 2013 if he had not let his SCI clearance "slip."  *Id*., Ex. 29.

These documents also vividly show Plaintiff's misuse of BAE Systems' confidential information to try to obtain employment with KMS Solutions ("KMS"), a contractor that was competing with BAE Systems for the extension of the CIED Contract.  *Id*., ¶ 22.  Plaintiff provided detailed information to KMS in April 2013 concerning BAE Systems' work on the CIED Contract,

including its management structure, the location and placement of personnel within the various zones, and BAE Systems' reporting structure with the military. *Id.* For example, Plaintiff shared a proposed CIAT staffing analysis with KMS modeled after the CUB that Plaintiff used as RM of RC-E, including the names of and detailed information concerning employees and contractors assigned to the CIED Contract. *Id.* Although Plaintiff represented to KMS that he obtained this information from LinkedIn, it is evident that most of the information was copied directly from BAE Systems' CUBs, which he accessed at least as recently as April 2, 2013. *Id.*

Moreover, BAE Systems uncovered numerous documents that call into question whether Plaintiff undertook a good faith search for employment after he was terminated. In those documents, Plaintiff offers various justifications for the "gap" in his employment after he was terminated, including assertions that he was: (1) taking "time off to complete a Bachelor's Degree"; (2) participating in the PTSD study described above; (3) "finishing up [his] divorce sh__", including "removing exwife from my house"; (4) studying to take the Project Management Professional examination; (5) taking "a break since I have been deployed to Middle East for the last 5 years"; and (6) working for Hosch Enterprises and/or other business ventures, including the purchase of various properties and businesses. Bertram Dec., Ex. 30. If any of these justifications are true, he is not entitled to backpay compensation for periods during which he voluntarily removed himself from the job market.

### v.  The Forensic Review Data Demonstrates That Plaintiff Took Steps To Destroy Evidence

Plaintiff does not dispute that he downloaded and deleted and then retained on his personal devices "all" communications relevant to the claims he asserts in this lawsuit. Hosch Tr. at 146 (Ex. B). He also admitted to additional acts of spoliation. For example, he deleted documents that

comprised the basis of his reports in his calls to BAE Systems' Ethics Hotline. *Id*. at 355-56. Hosch also testified that he might have deleted several documents belonging to BAE Systems. *See, e.g., id.* at 427-29. Hosch refused to provide any information concerning responsive documents he concedes he spoliated, despite a specific instruction requesting this information. *See* Bertram Dec., Ex. 8 at 4. For these reasons, BAE Systems moved to compel a forensic inspection of Plaintiff's devices and computers, which the Court granted on December 6, 2013.

Although BAE Systems' review of the forensic evidence is not complete, it is evident that Plaintiff not only withheld information, but also engaged in spoliation. Plaintiff deleted thousands of potentially relevant documents within days of receiving BAE Systems' document retention notices. On October 7, 2012, just nine days after receiving BAE Systems' demand for return of Company documents and data and three days after receiving the document preservation notice, Plaintiff deleted eight file folders on his hard drive. *Id*., ¶ 23. Plaintiff deleted four additional file folders three days later. *Id*. At no time in discovery did Plaintiff report or inform BAE Systems of his deletion of potentially relevant documents. These documents were uncovered at the eleventh hour when Plaintiff finally submitted a portion of his electronic devices for forensic review.

### vi.  The Forensic Review Data Raises Serious Questions About Plaintiff's Truthfulness

The documents located through the forensic review further call into question the truthfulness of Plaintiff's testimony and representations in this litigation. For example, one of the justifications for BAE Systems' decision to terminate Plaintiff was a series of actions he undertook to sabotage the operations of RC-E before he transferred, including returning BAE Systems' office space and equipment at what is called the "Pink Palace" at BAF. When BAE Systems interviewed Plaintiff concerning these actions, Plaintiff claimed that the military requested that he return the space and

17

equipment, but refused to identify the name of the person who made the request. Raven Tr. at 120-

122 (Ex. D). At his November 4, 2013 deposition, Plaintiff testified that an individual named Robert

Smith told him in March 2012 that Plaintiff needed to transition the space and equipment back to the

military. Hosch Tr. at 70-71 (Ex. B). Mr. Smith similarly claimed in a declaration provided shortly

after Plaintiff referred him for a job at Raytheon that he had demanded the return of the property.

Bertram Dec. Ex. 31 ¶ 10.

However, the following email chain uncovered in the review strongly suggests that Plaintiff

voluntarily returned the space to Mr. Smith on May 1, the same day his manager him of his transfer

to RC-N:

> To:      Vince[cvinceh@yahoo.com]
> From:   Robert Smith
> Sent:    Tuesday, August 14, 2012 1:57 PM
> Importance:      Normal
> Subject:          Re: Fw: *I am returning the PP to you*
> Bro,
> Been good Bro. getting promoted and all.  Everything is good so far. *I still have your spot if*
> *you come back here*, however if I have a choice I would pick Qatar. I do need some
> peroxide...
> V/R
> Rob ….
>
> From: Vince <cvinceh@yahoo.com>
> To: Robert Smith <rsmithjr1973@gmail.com>
> Sent: Monday, July 2, 2012 10:23 PM
> Subject: Re: I am returning the PP to you
>
> Bro,
> What up?  Things are going good just chilling and traveling. I report to SAIC in VA on 30
> July to start training and will then have to go back to CRC before coming back over.  What
> been up with you? *I hope you haven't gave my spot away* or been knocking any down in
> there.  Do you need anything?  If so let me know.  Hit me up one day and we will chat.
> My address is P.O. Box 156, McAdenville, NC 28101
> V/R
> Vince
>
> From: Robert Smith <rsmithjr1973@gmail.com>

To: Vince <cvinceh@yahoo.com>
Sent: Sunday, July 1, 2012 3:59 AM
Subject: Re: I am returning the PP to you

Bro.
How's it going?
I need an address to send your mail to you.  Also, when are you due to be back?
Rob

On Tue, May 1, 2012 at 4:24 PM, Vince <cvinceh@yahoo.com> wrote:
Rob,
*I have returned the PP to you for safe keeping*.  Give me a number when you have time to
talk .
Vince

Bertram Dec. Ex. 32 (emphasis added).  Although this email was directly responsive to numerous

document requests and should have been produced back in September, Plaintiff never produced it in

discovery.

The documents that BAE Systems uncovered through the forensic review concerning Hosch

Enterprises similarly call into question the truthfulness of Plaintiff's representations and demonstrate

his practice of selectively producing documents.  In his deposition, Plaintiff represented that "[t]he

only business venture that Hosch Enterprises ever completed was a rental property.  That's it."

Hosch Tr. at 39-40 (Ex B).  Plaintiff further claimed that the only other venture in which Hosch

Enterprises was involved was a parking lot in Myrtle Beach.  *Id.* at 40.  When asked why he did not

disclose his ownership of Hosch Enterprises when he was hired by BAE Systems, he testified that a

representative of BAE Systems told him that he was not required to disclose Hosch Enterprises on his

application "as long as it didn't compete with BAE's business."  *Id.* at 35-39.

The Business Plan that Hosch prepared for Hosch Enterprises and communications

concerning the Company's operations identified through the forensic review tell a different story.

The Business Plan describes the Company as a "Consulting, Contracting and Procurement Company .

19

. . focused on serving the comprehensive needs of government, local and international businesses in a full range of the business cycles [sic]." Bertram Dec., Ex. 33. The Business Plan makes repeated references to Hosch Enterprises' experience and work in Iraq and Afghanistan. *Id.* It is clear that Plaintiff failed accurately to describe the work of Hosch Enterprises in this litigation and that he has no legitimate justification for failing to disclose it to BAE Systems when it hired him.

### vii. The Forensic Review Data Suggests His Primary Witnesses Are Biased

BAE Systems' initial review of the forensic data suggests that Plaintiff's witnesses may have been influenced or manipulated by Plaintiff. For example, on November 20, 2013, just two weeks before he submitted a declaration in this case on Plaintiff's behalf misrepresenting that he directed Plaintiff to return the office space and equipment in the Pink Palace, Plaintiff referred Robert Smith for a position at Raytheon. Bertram Dec., Exs. 31, 34. There are also extensive communications during the period between April 2013 and November 2013 showing Plaintiff's efforts to help Smith find a job in Afghanistan. *Id.* ¶ 24.

In addition, there is a curious sequence of communications between Plaintiff and Marilsa Santiago, another witness in the case. It appears that Ms. Santiago was in the process of purchasing a home in North Carolina in 2013. In an email dated February 21, 2013, Plaintiff provided income verification information to Ms. Santiago for her employment with BAE Systems. *Id.*, Ex. 35. In emails dated February 23, 2013, Plaintiff provided Ms. Santiago with the routing and account numbers for one of his bank accounts and his mailing address. *Id.*, Ex. 36. The account numbers he provided were the same as the ones that he provided to a business partner for the repayment of a loan. *Id.* Ex. 37. Then, in an email dated June 2, 2013, Ms. Santiago wrote "I want to tell you thank you –

I finally closed on BT." *Id.* Ex. 38. Plaintiff responded back, stating "Congratulations on your new home!!!" *Id.*

It is unclear what circumstances surround these gestures made by Plaintiff to these witnesses in the case. But, that is precisely the point. Because this information was obtained after Ms. Santiago's deposition and when only a short portion of Plaintiff's deposition remains, BAE Systems does not know whether there is an innocent explanation for these documents or if they suggest some improper relationship between Plaintiff and his witnesses.

## F.  Plaintiff Fails To Comply With The Court's Orders Compelling Him To Execute Releases

The Court's December 6, 2013 Orders compelled Plaintiff to execute releases for his medical and military records. On December 11, 2013, counsel for BAE Systems sent Plaintiff's counsel (for the third time since August 23, 2013) releases for the production of records by the Veterans Administration, the military and Plaintiff's medical providers. Bertram Dec. Exs. 39-41. BAE Systems' counsel insisted that they be returned by the December 13, 2013 deadline set by the Court. *Id.* Plaintiff ignored that deadline, claiming that ". . . Plaintiff **has been in remote areas of Afghanistan** and unable to send us the signed releases. We will send them to you as soon as we receive them. " *Id.*, Ex. 17 (emphasis added). Plaintiff did not produce the signed releases until December 27, 2013, two weeks after the deadline for compliance with the December 6 Orders and on the eve of the close of discovery.

Counsel's representations regarding Plaintiff's availability directly contradict prior representations to counsel for BAE Systems. Plaintiff had been scheduled to be deposed on December 18, 2013. Because that date conflicted with an arbitration hearing, counsel for BAE Systems conferred with counsel for Plaintiff about rescheduling the deposition. Plaintiff's counsel

21

claimed that Plaintiff could not participate in a deposition on any date between December 19 and December 31 because he would be "*travel[ing] to remote parts of Afghanistan*."   Bertram Dec. Ex. 42.  As such, Plaintiff has no excuse for failing to execute his releases by the December 13, 2013 deadline.

### G.  Plaintiff Violated The Court's Orders Requiring Him To Supplement His Interrogatory Responses

On December 11, 2013, Plaintiff produced a woefully inadequate supplemental production of documents.  On December 12, 2013, counsel for BAE Systems detailed the deficiencies in that production and also noted that Plaintiff had not supplemented his responses to Interrogatory Nos. 3, 8, 9, 10 and 11.  Bertram Dec. Ex. 22.  Counsel insisted that the supplemental responses be produced by December 13, the deadline for compliance with the December 6 Orders.  *Id*.

Plaintiff did not produce supplemental responses prior to the deadline.  A week later, in a December 18 letter, Plaintiff's counsel stated that Plaintiff would produce supplemental responses "*as soon as he returns from traveling to remote areas of Afghanistan* and is in a location where he can draft the responses and send them to us."  *Id*. Ex. 17.  As noted above, this excuse is inconsistent with his prior representations to BAE Systems' counsel.  *See supra* at 23.  He belatedly produced the responses on the afternoon of December 27, the eve of the close of discovery.

The supplemental responses that Plaintiff provided are not only "too late," they are also "too little."  For example:

- Interrogatory No. 3 requested specific categories of information regarding Plaintiff's former employers.  Although he provided certain of this information, he failed to provide all of the requested information.  Bertram Dec. Ex. 26 at 2-4.  Moreover, he completely ignored the request concerning any complaints made to or about his former employers, providing a response limited to "administrative or judicial complaint[s]." *Id*. at 4.

- Interrogatory No. 9 requested information concerning Plaintiff's efforts to seek employment since January 2007. *Id.* Plaintiff provided a completely inadequate response to this interrogatory. Rather than provide information or produce documents, he directed BAE Systems to sift through the close to 4,000 emails in his Yahoo! email account to retrieve whatever information was contained in those communications. *Id.* at 5. This "go fetch" response is not a response at all, and is illustrative of Plaintiff's cavalier approach to his discovery obligations.

- Interrogatory No. 10 seeks information about Plaintiff's medical treatment and conditions prior to his termination by BAE Systems. *Id.* Again, his two line response is utterly deficient. Plaintiff did not respond to BAE Systems' request for information concerning the medical professionals who treated him or the dates of treatment. In response to BAE Systems' request for his symptoms, conditions and prognosis, Plaintiff merely stated "Primary Care" and "VA Disability." For details about his treatment, he directed BAE Systems to "See Records," explaining "Please see the signed medical releases to obtain all documents relevant to this response." *Id.* Again, by belatedly executing releases for medical information, Plaintiff was not relieved of his obligation to provide complete and accurate responses to BAE Systems' discovery requests.

Plaintiff's response to Interrogatory No. 10 is in marked contrast to Plaintiff's comparatively robust response to Interrogatory No. 11, which sought information about treatment for medical conditions Plaintiff claims were caused by BAE Systems. *Id.* at 7. While still deficient,[4] comparing Plaintiff's responses to Interrogatories Nos. 10 and 11 demonstrates his general approach to discovery: he will provide documents and information if he believes they will further his legal claims and theories. Otherwise, he will provide as little information as possible and/or throw up objections and roadblocks to BAE Systems uncovering responsive information.

---

[4] For example, he directed BAE Systems to "See Records," explaining "Please see the signed medical releases" and unspecified "prior document productions for additional documents relevant to this response." Bertram Dec., Ex. 26.

III.    **ARGUMENT**

A. <u>**Standard for Rule 37 Motions to Compel**</u>

Sanctions against a litigant for discovery and other misconduct are within the court's discretion.  *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc*., 872 F.2d 88, 92 (4th Cir. 1989) (Internal citation omitted).  Although the sanction of dismissal is a harsh remedy, it does not deprive a litigant of the right to trial by jury and a fair day in court when he has demonstrated a clear intent not to participate in good faith in the litigation.  Accordingly, the Fourth Circuit applies a four-part test to determine whether dismissal is an appropriate sanction for discovery misconduct: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.  *Id*.

In *Richards*, the defendants filed a series of untimely and inadequate discovery responses which were, as here, the subject of multiple motions to compel.  *Id*. at 89-91.  The magistrate judge recommended default, and the district court entered default, incorporating by reference the Magistrate Judge's Report and Recommendation.  *Id*. at 91-92.  On appeal, the Fourth Circuit affirmed, holding that the defendants' conduct represented bad faith and callous disregard, both for the authority of the district court and for the Rules.  *Id*. at 92.  Noncompliance with orders and the Rules, the court observed, not only jeopardizes the adversary's case, but also encourages other litigants to "flirt with similar misconduct."  *Id*.  The court considered sanctions to be an appropriate and particularly effective method to send an "unmistakable message to them and others that the judicial system will not tolerate repeated misconduct never wholly remedied in the future."  *Id*. at 94.

24

A review of these factors clearly supports the imposition of the severe sanction of dismissal in this case.

### B. Plaintiff Acted in Bad Faith in Failing to Comply with the Court's December 6, 2013 Orders and Engaging in Other Egregious Discovery Violations

There is no question that Plaintiff has engaged in bad faith that justifies the imposition of terminating sanctions.  Plaintiff has refused to produce basic discovery responsive to BAE Systems' legitimate discovery requests and to produce his computers, devices and accounts for inspection.  His actions forced BAE Systems to file two motions to compel, both of which were granted by this Court.  Even then, Plaintiff refused fully to comply with the Orders or his discovery obligations.  As discussed above, he (1) failed to disclose and refused to produce all media and credentials subject to the forensic inspection ordered by the Court;[5] (2) failed to produce numerous responsive documents in his possession, custody and control; and (3) failed timely and completely to supplement his interrogatory responses.

Plaintiff's bad faith is further demonstrated by his repeated misrepresentations about discovery-related matters – both to BAE Systems and to this Court.  For example, he claimed to have imaged all devices with relevant information to this matter, a claim that has proven to be false.  This is grounds for sanctions.  *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216-18 (S.D.N.Y. 2003);

---

[5] Plaintiff's blatant failure to abide by the Court's Orders to produce all electronic storage devices in his possession provides an independent basis for the imposition of sanctions.  *See PML v. N. Am. LLC v. Hartford Underwriters Ins. Co.*, No 05-cv-070404, 2006 WL 3759914, at *4 (E.D. Mich. Dec. 20, 2006) (imposing sanctions where defendant failed to produce electronic storage devices as ordered by the court); *Krumwiede v. Brighton Assocs.*, No. 05 C 03003, 2006 WL 1308629, at * 4 (N.D. Ill. May 8, 2006) (imposing sanctions because counter-claim defendant failed to produce storage devices onto which documents had been copied); *Ridge Chrysler Jeep, LLC v. Daimler Chrysler Servs. N. Am., LLC*, No. 03 C 760, 2006 WL 2808158, at *8 (N.D. Ill. Sep. 6, 2006) (dismissing case where plaintiff failed to produce a computer in discovery and engaged in other abuses); *American Family Mut. Ins. Co. v. Roth*, No. 05 C 3839, 2009 WL 982788, at *13 (N.D. Ill. Feb. 20, 2009) (imposing sanctions because defendant failed to produce a hard drive as ordered by the court).

25

*see also Broccoli v. Echostar Comm'n Corp.*, 229 F.R.D. 506, 511 (D. Md. 2005) (granting adverse inference where defendant failed to preserve evidence, even though the evidence was lost due to standard deletion procedures rather than affirmative misconduct); *Bryant v. Gardner*, 587 F. Supp. 2d 951, 968-70 (N.D. Ill. 2008) (spoliation would not have occurred if defendant "had stopped using the laptop, or if Defendant's attorneys had simply obtained possession of the laptop from him and made an imaging of the computer's contents, immediately after this lawsuit was filed").

Moreover, throughout the discovery period, including the period after the entry of the December 6, 2013 Orders, Plaintiff has made repeated efforts to conceal relevant and responsive discovery.  Plaintiff, for instance, falsely represented that his .mil account was "inaccessible" even though it can be accessed with a card.  When he failed to produce devices and accounts for inspection in response to the December 6, 2013 Orders, he falsely claimed – despite written correspondence that contradicted him – that counsel for BAE Systems told Plaintiff that he did not need to produce them. In addition, Plaintiff has repeatedly claimed that his incomplete submission for the Court-ordered forensic review excused his compliance with discovery obligations.  Indeed, he has essentially told BAE Systems that if it wants certain documents, such as mitigation documents and medical records responsive to its discovery requests, it must go and "fetch" them by searching through the over 10,000 documents identified through the forensic review. *See supra* at 15.

Furthermore, Plaintiff's false statements in his discovery responses and deposition unquestionably demonstrate bad faith, supporting the imposition of sanctions.  Despite his representation that he had no additional documents of BAE Systems or other employers, BAE Systems uncovered thousands of responsive documents in the forensic data.  To add insult to injury, the highly confidential information that he provided to competitor KMS concerning BAE Systems' work on the CIED contract belies his claim that he never used or disclosed the data of BAE Systems

26

in his possession.  The forensic data also shows that the testimony of Plaintiff and Mr. Smith

regarding Mr. Smith's claimed demand for the return of the office space in the Pink Palace was

concocted.[6]

Plaintiff's discovery tactics are clearly part of a concerted effort to avoid producing

information he considers helpful to BAE Systems and to skew the record in his favor.  Rather than

produce all responsive documents, Plaintiff has attempted to "shape" discovery, initially offering

only the documents that he collected and placed into his "BAE Concerns" folder.  Documents that he

did not consider helpful were deleted from his databases before he even left Afghanistan.  When BAE

Systems objected to Plaintiff's production, he refused to produce even basic discovery documents or

to submit to a forensic review, forcing BAE Systems to seek relief from the Court.

Since the Court granted BAE Systems' motions, Plaintiff has engaged in a veritable game of

"cat and mouse" – again, selectively producing documents, devices and accounts, offering a

revolving door of excuses for failing to provide a complete production, and commanding that BAE

Systems fetch from the forensic data documents he should have produced months ago.  As a

consequence of these tactics, BAE Systems believes that it has uncovered only a fraction of the

responsive documents that Plaintiff has in his possession, custody or control relevant to this case.

Plaintiff's refusal to produce documents and data called for in discovery provides a separate,

---

[6] *See PML* 2006 WL 3759914, at *5 (E.D. Mich. Dec. 20, 2006) (entering default judgment where
forensic inspection of defendant's computer revealed he had perjured himself with respect to when he
last accessed documents); *Ridge Chrysler Jeep* 2006 WL 2808158, at *8 (N.D. Ill. Sep. 6, 2006)
(dismissing case where plaintiff lied about computers in his possession, and engaged in
"gamesmanship [that] was employed to prevent Defendant" from supporting its defenses and
counterclaims); *Essex Group, Inc. v. Express Wire Servs.*, 578 S.E.2d 705, 707-8 (N.C. Ct. App.
2003) (entering default judgment in trade secret case because defendant lied about stolen documents,
even though the documents were ultimately recovered.

27

independent basis to impose sanctions.[7]

In short, Plaintiff has made a mockery of our legal system's discovery processes.  His actions clearly meet the bad faith standard justifying the imposition of sanctions.

## C.  BAE Systems Has Been Prejudiced By Plaintiff's Noncompliance

There can be no question that BAE Systems has been prejudiced by Plaintiff's discovery tactics and violations.  BAE Systems has incurred incredible expense as a result of Plaintiff's refusal to abide by the most basic obligations of preserving and producing relevant evidence.  Plaintiff's foot-dragging and diversionary tactics have required BAE Systems to send countless letters, file three motions, and undertake a costly forensic review to obtain data and other evidence that should have been returned to BAE Systems and produced in discovery many months ago.  Moreover, Plaintiff's "go fetch" approach to discovery, inviting BAE Systems to sift through thousands of documents to obtain responsive documents, has cause BAE Systems to incur further significant costs.  The need to file this motion only adds to the burden inflicted upon BAE Systems by Plaintiff's misconduct.

BAE Systems has also been prejudiced by being denied critical information at the outset of the case.  If, as Plaintiff's counsel represented, Plaintiff had imaged all of his computers, devices and accounts when he received BAE Systems' preservation notice, BAE Systems would have had access to them for the forensic review.  Moreover, by selectively producing documents and information in the waning hours of discovery (and continuing after the close of discovery), Plaintiff has denied BAE Systems a fair opportunity to participate in discovery.  For instance, if Plaintiff had produced

---

[7] *Law Enforcement Alliance, Inc. v. USA Direct, Inc.*, No. 02-1715, 2003 WL 1154115, at *8 (4th Cir. Mar. 14, 2003) (upholding imposition of sanctions based on failure to produce); *Arista Records, LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 134-36 (S.D.N.Y. 2009) (imposing sanctions when forensic analysis revealed that documents had not been produced and other misconduct); *Ridge*, 2006 WL 2808158, at *10 (imposing sanctions where, despite "Defendant's clear efforts to both seek preservation of these items and then review of them, neither have been produced.").

28

mitigation and medical records in a timely manner, BAE Systems could have provided them to its experts and issued a series of subpoenas requesting additional records from third parties, and questioned witnesses concerning them.  Similarly, if Plaintiff had produced the communications with Ms. Santiago, Mr. Smith and other BAE Systems employees and witnesses, it could have questioned them concerning those documents.

### D.  Plaintiff's Flagrant Discovery Abuses Demand A Strong Response

Plaintiff's misconduct – if allowed to stand – would strike at the very core of the American system of justice and at our established principles of fair play and justice.  Plaintiff and his lawyers have flouted their discovery obligations, ignoring BAE Systems' legitimate discovery requests and selectively producing information helpful to their cause.  This malfeasance has included purposeful destruction of evidence and evasive testimony and tactics.  Through their misconduct, Plaintiff and his counsel have hindered BAE Systems' efforts to defend itself against Plaintiff's claims, and have caused BAE Systems to expend substantial resources demanding discovery and sifting through data that should have been produced months ago.

For these reasons, Plaintiff should not be permitted to pursue his action.  Any sanction short of the dismissal of Plaintiff's Complaint would be insufficient to remedy the severe harm which Plaintiff and his lawyers have inflicted upon BAE Systems and the administration of justice in general.  *See Rogler v. Philips Bldg. Mental Retardation Program*., 126 F.R.D. 509, 514-15 (D. Md. 1989).  Because Plaintiff is likely judgment-proof, monetary penalties may be of minimal value both with respect to making BAE Systems whole as well as from a deterrence perspective.  *See Rogler*, 126 F.R.D. at 514 ("[P]laintiff has stated that she has little or no assets. Accordingly, imposition of a fine or transfer of costs would hardly be effective.").  In addition, because this case has progressed so far, taken so long, and cost so much, other remedies such as renewed discovery or adverse inferences

29

would not adequately resolve the harm because BAE Systems has already, in effect, litigated this case

for the past year and one-half without the benefit of full, candid, complete, and forthright discovery.

*See Aerodyne Sys. Eng'g. Ltd. v. Heritage Int'l Bank,* 115 F.R.D. 281, 290-291 (D.Md. 1987);

*Rogler*, 126 F.R.D. at 514-15.

In addition, dismissal best effectuates the public interest by sending a strong signal that severe

litigation misconduct will be met with equally severe penalties. *See Rogler*, 126 F.R.D. at 514.

Dismissal is especially warranted in this case because each of Plaintiff's categories of misconduct

independently justifies dismissal:

(1)     document theft, see *Laughlin v. Metropolitan Washington Airports Authority,* 149 F.3d 253,
260 (4th Cir. 1998) (employees who steal proprietary company documents are foreclosed from
pursuing their retaliation claims, even if they may attempt to convert their criminal activity into self-
described "protected activity"); *JDS Uniphase Corp. v. Jennings 473 F. Supp. 2d 697, 700 (E.D. Va.
2007)* (same);

(2)     spoliation, *see Silvestri v. General Motors Corp.* 71 F.3d 583, 593 (4th Cir. 2001) (dismissal
and entry of a default judgment are warranted when a party either willfully and egregiously destroys
evidence, or evidence that is destroyed, either willfully or otherwise, is critical to the case); *White v.
Office of the Public Defender for the State of Md.*, 170 F.R.D. 138, 152-53 (D. Md. 1997) (dismissing
complaint as sanction against litigant's spoliation);

(3)     perjury and fraud on the court, *see Ferguson-Bey v. Lever Bros. Co.,* 586 F. Supp. 1435, 1442
(D. Md. 1984) (dismissing complaint with prejudice where plaintiff made false representations in
affidavit); *Hull v. Municipality of San Juan,* 356 F.3d 98, 101-03 (1st Cir. 2004) (willful and
deliberate fraud on opposing parties and the court in discovery justifies dismissal as sanction); and

(4)     obstruction of discovery, *see In re Mutual Funds Investment Litig.*, 590 F. Supp.2d 741, 758-
59 (D. Md. 2008) (dismissing complaint where plaintiff's bad faith misconduct obstructed discovery
and constituted "a pattern of indifference and disrespect to the authority of the court"); *Rogler*, 126
F.R.D. at 514-15 (dismissing complaint where plaintiff was responsible for "conduct which has made
a mockery of discovery and has disrupted progress in this case"); *Aerodyne*, 115 F.R.D. at 290-91
(dismissing complaint).

## IV.    CONCLUSION

For the foregoing reasons, BAE Systems requests that Court enter an Order granting its

Motion for Sanctions.

30

_/s/   Connie N. Bertram_
Connie N. Bertram
VA Bar No. 31713
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.,
Suite 400 South
Washington, D.C. 20004-2533
Telephone: (202) 416-6800
Facsimile: (202) 416-6899
cbertram@proskauer.com

_Counsel for Defendant_

January 3, 2014

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this the 3rd day of January, 2014, a true and correct copy of the

foregoing Defendant BAE Systems Information Solutions Inc. Memorandum in Support of Its

Motion for Sanctions was served with the Clerk of the Court using the CM/ECF system, which will

then send a notification of such filing (NEF) to the following:

> R. Scott Oswald
> Adam Augustine Carter
> The Employment Law Group, P.C.
> 888 17th Street, NW, Suite 900
> Washington, DC 20006
> Telephone:  (202) 261-2803
> Facsimile:  (202) 261-2835
> soswald@employmentlawgroup.com
> acarter@employmentlawgroup.com
> *Counsel for Plaintiff*

>    */s/  Connie N. Bertram*     
>    Connie N. Bertram